Our next case on the call of the docket is Agenda No. 16, Case No. 113-907, Kenneth E. Poris, Appalee v. Lake Holiday Property Owners Association, Incorporated, et al. Appellants. Counsel for the appellant, please proceed. Good morning, Your Honors. Counsel, may it please the Court, I'm Bruce Lyon. I'm appearing on behalf of Lake Holiday Property Owners Association. With me today are my co-counsel, Camilla Pollack Flynn, and Doug Giff, as well as a number of members from Lake Holiday. Your Honors, the key issue that we're here to discuss today involves the fundamental right of a private association and its members to contract, enact, and enforce private rules and regulations for the self-governance free from judicial interference when there is no issue regarding due process and where you do not have rules which are arbitrary or fraudulent. Lake Holiday is a not-for-profit corporation. The plaintiff, Mr. Poris, has been a member for 18 years. When Lake Holiday was initially formed through its PLATA survey and declaration restrictions, it involves 1,500 acres with 2,000 single-family homes, 400 of which are on a 328-acre lake. Private roads traverse the community. There are a number of these communities throughout the state of Illinois. It's important to remember that these roads are private. Now, counsel at the trial court and appellate court and even here has raised the issue of the Lake Holiday's rights to make these rules as they have relative to enforcement of speed. So I want to take you through briefly and look at where those rights come from. Can I ask you a couple of factual questions, counsel, before you even get into that? Yes. Do local and state or county officers also patrol Lake Holiday roads in addition to the security officers? An enabling ordinance was passed a few years ago, which does permit LaSalle County to come into the area. But that does not prohibit Lake Holiday from enforcing their own rules. I know you're going to go into that. I just want to get some facts. So LaSalle County officers also issue speeding tickets or whatever in that area, or can? They can, I believe, given the fact that they're aware of Lake Holiday's security presence. If they do, I think it would be an extremely rare situation. Okay. And do Lake Holiday security officers issue traffic citations to individuals who are on those streets that are not part of the association? Or have they? They have issued citations which the member who that person is visiting is ultimately responsible for. So if someone were coming to visit, you know, if I owned a home at Lake Holiday and someone was coming to visit me, they are there at my behest. And if they were stopped and they were speeding by the Lake Holiday security force, the ultimate responsibility for that citation would fall upon the owner, because the owner is the one who has contracted with Lake Holiday and agreed to follow their rules and regulations. And the members would get the citations? Ultimately, the members would be responsible for the citation. I believe that there have probably been occasions where the citation may have been written to the other person, but that person has no contractual relationship with Lake Holiday, and therefore Lake Holiday wouldn't have the right to collect from them. They would ultimately have the right to collect from the owner, and the owner could then ask their friend for the fee. Our last factual question. Sure. I'll let you get into your legal argument. Is Lake Holiday a gated community? It is not. There is not a gate where you have to go and check in and give your name or give identification before entering. You can drive in without that. Does the general public then use the Lake Holiday roads not being gated, or is it primarily members and guests? It is virtually exclusively members and guests. Okay. Thank you. And I think the reason why the video of the traffic citation is in the record, and I hope you all have seen it because I think it helps clarify a number of issues as to what took place. Just to follow up on one factual question posed by Justice Thomas, since it's not a gated community, non-invited guests or uninvited guests, visitors, trespassers, whatever curiosity seekers could drive in, who has ultimate responsibility for their ticket? Well, what I believe Lake Holiday, all they could do is indicate to the person that you're on private property and that they shouldn't be able to come back again. They couldn't issue them a speeding ticket. They could not issue them a speeding ticket because, again, there is no contractual relationship with that person. Now, I think where that issue comes into play more often is at the private beach and on the private lake on Lake Holiday's premises. Because one of the things that Lake Holiday, one of the reasons for the rules, which allows them to ask people for their Lake Holiday identification card as well as a driver's license, is because they do want the lake and the beach to be used by the members of Lake Holiday. And that's one of the things these members of Lake Holiday are paying for when they join the association and buy property here. Now, getting back to where Lake Holiday's authority derives from, if you look at the survey and the declaration restrictions, it grants Lake Holiday responsibility for construction, repair, and maintenance of roads. The articles of incorporation then state that Lake Holiday was formed and construct private roads and maintain thereon buildings and structures of all types, roadways, and all other things reasonably necessary therefore. Bylaws were then entered, which gave the Board of Directors empowerment to adopt rules and regulations necessary for the association and its members, including employing people to enforce the rules and regulations. Ultimately then, rules and regulations were adopted, including the 25-mile-per-hour speed limit, and it provided for violations for not following the rules. And the rules specifically stated that no one shall resist or obstruct the performance of an authorized person and that private security officers are given the power to enforce the regulations. So when you look at the Not-for-Profit Corporation Act, which gives not-for-profits the right to exercise all powers necessary to affect any purpose which the corporation was formed for, it's 805 ILCS 105-103.10, and then look at the cases of Shepard v. Pollution Control and Elward v. Peabody Coal, Lake Holiday has both enumerated powers and implied powers. Council has raised the issue of whether or not it specifically says you can stop people for traffic violations. And no, it does not. But the whole idea is that these are more general in scope. We do not live by a Napoleonic code here where you have to have every specific thing stated. Instead, general filings are used and are purposely intended to be broad to give corporations latitude. Are there any limits to rules the association can enact? Absolutely. And I think the cases that have been decided in the state relative to private associations are very instructive on that. If they violate due process, they can't be enacted. If they are fraudulent or if they are arbitrary, they cannot be enacted. But absent that, the courts in Illinois have universally indicated that they are not going to substitute their judgment for the judgment of the private association. And so long as the rule and the enforcement do not violate due process, are not arbitrary, are not fraudulent, the courts are going to, or if the rule is not enforced on a level playing field. But absent that, they are going to let the private association adopt its rules and enforce those rules. So under your reasoning, would it be permissible if a rule was passed that allowed the security department to stop individuals to conduct field sobriety tests and issue citations for driving under the influence? And would that be a security department operating as a de facto police department? Well, if the security, there is no, in that scenario, they would be following and issuing citations for violations of the Illinois Motor Vehicle Code. And that is Lake Holiday Security is not empowered to do that. Lake Holiday Security can only issue citations relative to violations of Lake Holiday's rules. And so under your scenario, the Lake... Lake Holiday's rules was that no one is to drive under the influence. If Lake Holiday had a rule, as long as that rule was not counter to a Illinois statute, because they cannot make rules that are counter to an Illinois statute. But if they had a rule and their members agreed to that, then they could stop someone for that. I think the amicus brief, I think, had a very interesting scenario that they laid out, which is in a private community such as this, somebody might have a golf cart. And they are driving down the road with five kids on that golf cart. Okay? Does Lake Holiday have the ability in that case, because Lake Holiday had a rule that, okay, you can't have golf carts and have more than two people in them. Would they have the ability to stop that person? I think the answer would clearly be yes. Are there analogous situations where security officers issue tickets for traffic violations, like in the university setting or the country clubs or mall security? Absolutely. I mean, I think that the issue here is the appellate court's decision has left a scenario where these private organizations do not know what they can do and how they can enforce their rules. Because, you know, if you're at a private university and you have a security force, are you able to enforce the university's rules? You should be able to. At a shopping mall, you know, can you enforce the rules at a mall? It's a little bit different because the general public is invited to a shopping mall. And you also get into situations there where security at those places are oftentimes stopping people for shoplifting, which is a violation of the Illinois criminal code. And at that point, then, they are basically holding someone while they call the police, which is a different scenario. But in whether it be a country club, an elk's club, a university, yes, there are a number of scenarios statewide where this comes into play. And I think the amicus brief was very, very informative on that because it talked about the, I believe, 19 late communities, but that's only one aspect. There are other aspects that also. There's a whole series of driving incidents, DUI or an accident that results in fatalities. Are those reported to the Secretary of State's office so that license can be revoked, suspended? Well, in a situation like that, the LaSalle County Sheriff wouldn't be needed to come in and police that situation. At which point, if there's an accident, at which point would LaSalle come in? If you had a traffic fatality, you would have the LaSalle County Sheriff would come in because the Lake Holiday Security is not going to be able to perform a major accident investigation and you'd have ambulance personnel, et cetera, coming into the community. In terms of at what point, at what degree does LaSalle come in, I think that LaSalle, when you have violations of Illinois statutes, if you had some type of a criminal activity, if the Lake Holiday Security saw someone burglarizing a home, they're going to then call the LaSalle County in order to be able to have LaSalle County actually make an arrest for a criminal violation. There's a question at the other end of the spectrum. These citations for speeding, whatever, are those reported to the Secretary of State's office? No, they are not. What I think is crucial here is this does not affect your driving privileges. This is not them trying to enforce Illinois statutes. This is simply Lake Holiday enforcing private contract rights with its members. And I think that the appellate court missed that issue. They looked at this solely as an issue of the stop and whether this was a citizen's arrest. They didn't look at the issue that Mr. Porras was a member of Lake Holiday. When he moved there, he agreed to the rules and regulations of Lake Holiday. He had the opportunity to work with the board or to run for the board to try to change the rules if he didn't agree with them. And he made the choice not to do that, and he made the choice to stay in the community. So he is agreeing to follow those rules. And that's what the court in the Lee case, I think it's very instructive. You have a hockey association that is not releasing a young child from a hockey team so he can play somewhere else. And the court goes, okay, our judgment may be different. We may think back to when we were kids, and these kids games should be for kids, and you shouldn't have all this adult enforcement of these rules. But we have to step back. This is a private association. A private association has set rules. And we're not going to put our judgment in where they have made a judgment unless they have failed to give due process or the rule is arbitrary or fraudulent. And here that simply is not the case. This is simply a mechanism so that the members of Lake Holiday can be safe in their community. Right. So there's no consequences for a member who speeds all the time, frightens children, hit a dog, doing a number of things. There are no consequences then for his conduct and behavior when the state seems to be going the other way, looking for consequences of people who behave in a certain way. Well, I would agree that there are consequences because you do have fines from Lake Holiday. Except for the money. Correct. But I do believe that the LaSalle County Sheriff, as they are already burdened trying to deal with their entire county, to not allow Lake Holiday to do this means there is zero consequences to someone. If Lake Holiday can't at least find this person, then the person could drive 90 miles per hour through Lake Holiday with no fear because these are private roads. Isn't that a system that can give protection to a member, a good old buddy system? We know you speed. We know you're reckless. But we're never going to report this to the state to pay us for the fine. I mean, they don't have, you know, could they report it to the state if they had a repeat violator? They could probably talk with LaSalle County Sheriff and say, you know, we have this issue of someone who is repeatedly driving 60 miles an hour. Those are after the facts. That would be after the fact. Correct. And of no value. I'm sorry? And of no value. Well, no, not necessarily. If you went and you were repeatedly speeding or someone was repeatedly speeding and Lake Holiday went to LaSalle County Sheriff and said, okay, we have someone who is habitually driving 50 miles per hour through the Lake Holiday area. At that point, maybe LaSalle County could come in and set up some type of a, you know, on a one-day thing, try to set up an area where they could get the person who was driving 60 miles an hour and 25 miles per hour who is threatening the safety of the children and the residents of Lake Holiday. Counsel, I see your light's on. I just want to understand your position on false imprisonment. I think you take the position that the appellate court was wrong in rendering judgment on that count because it wasn't briefed or argued in the circuit court. That is correct. I mean, my initial position is. Waiver. Yeah, waiver. And we have a right, because of our right to stop, there was no false imprisonment. But if you get beyond that, if you disagree with us, there still is a factual issue. Well, if the court agrees with you, is your position that we should render judgment in your favor or send it back for briefing and argument on that issue? Well, I believe that you should render judgment in our favor because since we believe we are justified in performing the traffic stop, and the traffic stop was justified, and the traffic stop was four and a half minutes, I believe that as a matter of law there was no false imprisonment here. Okay. With regard to that, counsel, but the plaintiff, with regard to waiver, the plaintiff himself filed a motion for summary judgment on that count, and the trial court ultimately granted Lake Holiday's motion for summary judgment on all the counts, including that one, and the Third Amendment complaint, which included the count for false imprisonment. So although the false imprisonment may have lacked the briefing, it surely did not improperly raise the issue to respond to it because there was a summary judgment motion. I agree with that, but what there wasn't in the plaintiff's brief was a factual basis for the granting of summary judgment. You know, and the trial court denied their motion as to false imprisonment and granted ours, and I believe the rationale was, you know, ultimately there was no issue raised by the plaintiff factually that would permit him to go forward with a false imprisonment. But you agree that it was raised? I agree that he raised in his, he had a motion for summary judgment and false imprisonment was the counts. So given my time is up, I would ask that the court reverse the appellate court and reinstate the trial court's ruling granting summary judgment as to all counts on behalf of Lake Holiday. Thank you. Thank you, Mr. Lyon. Counsel for the appellee. Mr. Chief Justice, members of the court, counsel, My name is Ken Porras, and I have the dubious distinction of not only being the person arguing this case, but also the plaintiff. This is a case where you'll find out in my argument that Mr. Lyon and I obviously have never agreed as to anything. What I would like to correct is, I believe it was Justice Thomas asked a question about whether people from the outside regularly go into Lake Holiday. The answer is yes. Lake Holiday straddles the sides of two communities, Salmonauk and Sandwich, and people from both of those communities regularly come into Lake Holiday even though they are not residents. Furthermore, the traffic citation against me is still pending, and I would categorically deny I was speeding. I was not. That being said, Could you start, Mr. Porras, just briefly with where I believe Justice Burke left off with opposing counsel. Why hasn't the false imprisonment claim been waived? We had appealed the entire circuit court ruling. At that particular time down in the circuit court, Judge Doherty had ruled that we had to have a probable cause hearing. But since he had felt that the detention was not illegal, that in effect knocked me out on the false imprisonment, because he felt they had a right to make the stops. So therefore, it was like an exercise in futility, and we said, you might as well just include it all because we can't proceed without the other factual basis that he had denied against us. Are the facts correct that you told security that they couldn't detain you? I suspect that is true, right? Yes, it is. And so in what way were you detained? Well, obviously I was pulled over. And as you can see from the video, there were white and amber lights, which, by the way, is something I don't understand why I've had to fight about a private security company, because that was not the light used in my stop, but it was raised anyway. But if you look at the video, I also got out of my vehicle. There was an argument with Mr. Podner, and I went back to my vehicle. And from the audio portion of that stop four and a half, five minutes later, it was clear that I had not agreed to being detained because I asked him, why are you detaining me? And he said, I'm not detaining you. I'm keeping you in your car for your safety and mine, or words to that effect. So, yes, I was not free to go. Plus, he took my driver's license. So you felt because he took your driver's license that you weren't able to drive the car? That is correct. As a licensed driver in the state of Illinois, I'm supposed to have it on me. And the point is, is that if I get a speeding ticket from a police officer, I can drive on that ticket. I cannot drive on a citation from Lake Holiday. And they had my license. Plus, if I were to leave, I could be cited for obstruction for not obeying his orders. Do you agree with opposing counsel that if we agree with his position, that they had the right to stop you for this, that there could be no detention in that circumstance and, therefore, the false imprisonment should just be reversed outright? No, I do not. All right. And your position on that? Well, my position is very simply this. If there was no false imprisonment, I wouldn't have stopped. But I was forced to stop. I was ordered to obey Mr. Podner. It was against my will. And, therefore, that's false imprisonment. Even if we determined that they had a right to make the stop? Well, if that's the case, obviously, you have much more authority than I do. So, I mean, yes, in that case, then it would end it. Sir, may I ask you a question? Yes. You indicated just now that the citation is still pending, that you deny the fact that you were speeding. In this arrangement, this scheme, this agreement, do you have a right to be heard? Is there some kind of process by which you can deny this? Well, that's an interesting question because I did go to a hearing for the citation committee and they promptly kicked me to the board of directors who are the same people I'm suing. So there's a citation committee? Right. And then there's a review of that by the board of directors of the? That's the way it's supposed to work, yes. Okay. Now, do you acknowledge that the association stated that they have a responsibility to maintain the roadways and they have private property? They do have a right, excuse me, they do have a responsibility, yes. I believe that the Articles of Incorporation originally stated repair, maintain, and construct on common areas and buildings. That deals with part of it. There was a few other items, but that's not relevant. However, they also had the boilerplate language that said any and all other things that are allowed by the Illinois not-for-profit corporation law. That they deleted when they amended their Articles of Incorporation in 1973. They could have, I believe it was in the mid-80s, around 83, 84, 85, somewhere in that range, that the Illinois legislature amended the Not-for-Profit Corporation Act to get away from the very specific purposes that you always had to set forth. And when they amended it, all you had to do is say things to the effect of any and all things allowed for homeowners associations under the Not-for-Profit Organization Act. Lake Holiday never filed those forms with the Secretary of State that allowed them to take advantage of that boilerplate language. That's why it's kind of surprising that they're trying to use that same language now when they never took advantage of it previously. So under those circumstances, I think that, you know, they're limited, very limited. And if you also look at the, I believe it was the Plan of Development, it said that if the roads, and they were talking primarily about keeping the roads in their original condition. And if you did not, if Lake Holiday did not keep the roads in their original condition, then LaSalle County could come in, make the repairs, and bill Lake Holiday for it. Thank you. Anyway, what I was going to start off with is saying if it looks like a duck, acts like a duck, and walks like a duck, it must be a duck. But looks can be deceiving. In this particular case, we have a squad equipped with lights. And it has video and audio recording tools plus radar. We have an officer dressed, driving that squad, dressed in a uniform, wearing a badge, containing an equipment belt outfitted with various equipment plus weapons, making a traffic stop using oscillating and rotating lights, giving orders, demanding compliance with those orders, and finally issuing a citation. To the average person, this would sound like a police officer. Why didn't it stop me? Very simple. The color of the lights was wrong. I do a lot of criminal law, and they should have been red and blue lights. Instead, they were amber and white. That's why I got out of my vehicle. Looking back, I probably should not have done that either, but I did. Anyway, this was not a police officer. This was an employee of a homeowner's association. One of the things that I think you should be aware of, and I'm sure you've looked at the video, but I went back and looked at it again. And during the conversation that occurred at the back of my truck when I was waiting there Mr. Podner approached, you'll notice that his flashlight at all times was on my midsection and on my hands. It, to me, indicates that he was aware of a potentially dangerous situation that could be there. He didn't know what I had or what I didn't have. But the irony of the situation is that he created the dangerous situation, and it ultimately turned out he was the one with the weapons. One of the other problems we have is that none of the Lake Colony security officers are required to be trained. The training is listed in the internal manual. And that's one of the things we talk about. They keep saying I agreed to obey rules. This is not in the rules. The only rules that involves Lake Colony security says that they're empowered to enforce the rules and they can issue citations. That rule was passed three and a half years after I moved in. So I don't think I'm required to sell my home because they passed a rule that may be invalid. The procedure for stopping vehicles is an internal document that most people don't get and we picked up through, I can't remember how it goes, through discovery, which was called the Lake Colony Security Manual, which says they will make traffic stops. I know that the court had asked Mr. Lyon about DUIs and that type of thing. The fact of the matter is, is this. If it's a Class A misdemeanor, then, yes, you have a right to make a stop. Can you use the lights to do it? That may be a problem. Because, again, the lights would be a felony under the Vehicle Code if you don't have proper authority. And with me, it was a rule violation which has a lot less authority than an ordinance. And for a citizen's arrest, it has to be for greater than an ordinance. And that is really what we're dealing with here, is we're dealing with concepts of not only the Illinois Motor Vehicle Code, but also with the Illinois Criminal Code, as well as trying to factor into this the Lake Colony rules. The problem that Lake Colony has is that they've given these security individuals who are not licensed. And if you look at the manual, it says that whatever training they have, first of all, they have to pay for, but second of all, they can only take, I think it's at the Illinois Valley Crime Commission, I believe it is. And there's a reason why we have to have licensing. The state legislature has indicated under the, I want to say Private Security Locksmith Act. I know I'm abbreviating it. But they said that that's for the protection of the public. Lake Colony says that, well, we're here to protect the public. But how are they protecting the public when, in effect, they've created a vigilante police department that's out there swooping down on people? They're not. Licensed security people know the rules. They know what you can and cannot do, which is only a citizen's arrest. The sheriff, they could bring the sheriff in and let him patrol the streets of Lake Colony. I think somebody told me it was like a special tax district. I'm not that familiar with municipal law. But there are other alternatives. We can put cameras up at intersections. There's things you can do. Lake Colony is not a gated community. And so, therefore, you can gate it. You can use swipes or, like, eye passes for the vehicles. There's many things they can do if they really wish to take care of the people of Lake Colony. But having people that are not trained, allowing them to carry weapons, and if you notice in this security manual, it says very clearly that you're allowed to carry whatever weapons you're certified to carry, and I think there's three exceptions, and there is a fourth. And the three exceptions are a stun gun, a spring loaded baton, a holster, and a gun. But everything else you can use. Is there actually any issue with that in this case? Well, there is to a degree, because the person that stopped me had a long flashlight, which the appellate court said could be a club-like weapon. And also we've had a nightstick. So, yes, it's a UUW. And, of course, under the armed violence statute, that's another felony. But they weren't used or you weren't threatened with those? He didn't pull a gun on you? No, he did not. Okay. I was ordered back into my vehicle, and my choices were to possibly create a confrontation, which could cost me my license, or obey the orders, even though I knew he was dead bang wrong, and I chose the latter alternative. So I defused it. He was not about to give in. Mr. Forrest, there's a number of issues that have been raised that we probably won't have enough time to more than touch, maybe not even touch some. So let me just ask you specifically, are you attempting to cross-appeal the ruling of the appellate court that the radar and the recording equipment were okay? What I said was that it was evidence of their attempts to act like a police department. It was used for illustration purposes only. The radar, I agree. You can use radar. I mean, I can buy a radar gun at Walmart to time a fastball. I agree with that. But this particular radar unit required an FCC license, and it's a police radar unit, and they falsified a letter to the FCC to get that license. That is still an open issue. The appellate court never addressed that issue. They just said you can use radar, and I agree. The same way you can use audio-video recording equipment. That's another good point. There were a number of counts that weren't even talked about by the appellate court. Correct. On what basis, and I believe this is your claim, that the appellate court did not affirm summary judgment in favor of defendants on the remaining counts in the complaint that were not talked about? That is correct. We had asked for partial summary judgment, and it was on four of, I believe, 13 counts. So you did not ask the appellate court to address those other counts on appeal in which you didn't? No. Well, we did not because we had never asked for summary judgment in the circuit court on them. Everything pretty much was focused on the declaratory judgment. If I lost that count, I pretty much lost it. But weren't there certain issues in which summary judgment was found in favor of the defendants? That is correct. In fact, the entire case was. And a number of those issues were not addressed by the appellate court. That is correct. And yet I believe your argument is that the appellate court has not, by their silence, affirmed the circuit court on those findings in favor of the defendant on those counts. That is correct. Well, and I go back to my question. Did you ask the appellate court to address those counts on appeal? Those counts were not raised on appeal because, as I said, the declaratory judgment count, when the circuit court ruled against me, that count pretty well took care of all the remaining counts of the complaint. And so, therefore, I mean, all those other counts then, in order to survive, we had to go back to the circuit court. Now when they grant me summary judgment. So, specifically, the answer to the question is you did not ask the appellate court to reverse summary judgment on those counts? No. All right. And it was because of the fact that the original count, which is declaratory, was what carried the day. I couldn't prove the rest of them when the court ruled against me. And you mentioned radar. How about the recording equipment? The appellate court found that was not in violation of the eavesdropping. No, that's true. So you're basically okay with those two findings? Right. I have no problem. I mean, I don't recall consenting, but the appellate court felt that my action said I did consent. And, you know, that's a judgment call, and I'll live with it. Anyway, what I would know, though, regarding the rules, one of the things you have to keep in mind with rules and also homeowners associations is that I believe that the Lake Holiday is looking for a real wide brush, the kind that you would use to put whitewash and maybe do the side of a barn. They want it as broad as they can with what they're allowed to do. But I think the case law is very contrary. It says that because homeowners associations are creations of the legislature since they're not-for-profit corporations, it's a very limited brush that they're allowed to use in their authority. They have to follow what they're allowed to do. As I've indicated, part of the problem is I still don't know why I'm fighting the private security because those are not the color lights that were used on me, but this was a factual situation that was changed during the course of this litigation. And it was so that Lake Holiday could use those lights. I think it's telling, though, that Mr. Clifford, in the testimony that was attached to the pleadings, indicated that the lights that were used on me, which were white and amber, were definitely illegal and they were a felony. And he knew it. So the question becomes, ultimately, I think, was I detained? The case law is very clear. Yes, I was. People at XREL, Ryan, if you take a look at the factors in that case, there's no doubt that I literally fell into every one of the categories that they indicated was evidence of an arrest. The mechanism they've created is not allowed by Illinois statutes. And I'm trying to skip ahead here because I'm going to run out of time. I know that. But the fact is that the Not-for-Profit Corporation Act has to be strictly construed. Lake Holiday further limited, back in 1973, the application of the Not-for-Profit Corporation Act as it would apply to them. We've already covered citizen's arrests. And, of course, the only thing I'd add on that is that this Court's case in People v. Lahr says that radar normally is not a tool that's available for individuals to use. And so, therefore, it cannot be the basis of a citizen's arrest. And, of course, obviously I was stopped. I think that that's one of the problems that we have. One of the things, too, is that they argue that Lake Holiday roadways are private roadways. And this is confusing because the LaSalle County Enabling Ordinance says that they're public roadways, or I think it's public roadways is a word they use, for the purposes of enforcement of the Illinois Motor Vehicle Code. So I guess if I get stopped by the sheriff on a 25-mile-an-hour speed limit in Lake Holiday, then, of course, I get a state citation. But if I'm stopped by Lake Holiday security for the same speed sign and same speed limit, I get a Lake Holiday traffic citation. If they're public roadways, I don't know how they can call them private roads. But Lake Holiday says, well, we don't enforce the Illinois Motor Vehicle Code. However, Rule 3.01 states that the Illinois Motor Vehicle Code must be observed in Lake Holiday. And the security manual specifically states that Lake Holiday security will enforce traffic laws. So they're contradicting themselves. And it's an illegal self-granted power. The issue of self-governing is very simple. I don't disagree that, to a degree, you're allowed to self-govern. But it has to be legal. It has to be within the law. And when they try the contract theory, the fact of the matter is, is that it cannot be a violation of the law, it cannot agree to the commission of a crime, and it has to be otherwise legal. Well, for me to agree to allow them to commit crimes in their enforcement of their rules, if I were to tell anybody else, they would tell me to leave my license with ARDC as I'm walking out of town today. So I cannot agree to an illegal contract. I cannot agree to a contract that violates Illinois law. And I did not agree to this. Does what they issue, Mr. Porras, do nothing more, really, than amount to a warning? It doesn't impact your license, right? It doesn't go to the Secretary of State's office once a Lake Holiday citation is rendered? It's meaningless to the Secretary of State. Right. And I guess just as a practical point of view, I mean, as a resident, I mean, do you want some type of constraint on people riding through at, like, 60 miles? I know you said you weren't speeding. But somebody riding through at 60 miles an hour on a street that should be 25, should there be any type of ability on the part of the Lake Holiday Association to try to protect people in that area in case LaSalle County isn't available? I think you can hire LaSalle County to come in. They can do that separately. They don't have to create their own non-licensed, untrained individuals to make traffic stops. There is alternatives available. You can put speed bumps in. You can put cameras up. I think one of the Lake communities actually has talked about putting cameras up to monitor speed. And I have no problem with that. You're not arresting people. That's my beef. My sole complaint in this whole thing is they arrested me, they had no authority to do so. And I think that what you're talking about is very apropos, but there are remedies available to them without resorting to self-help. And that's what they've done in this case. I do think this, and I see that my time is almost up. Your time has expired. What has expired? I'm sorry. It is expired. I'm sorry. I misread the call. Anyway, thank you for your attention. What are you asking us to do? I'm asking you to affirm the appellate court, send this back, and give me summary judgment on the counts that I've alleged. The counts that were never addressed, obviously they rest on the declaratory so that we can still proceed on those. Thank you. Thank you, Mr. Porter. Mr. Lyne. Fundamentally, we have an issue here relative to a member of a private association who entered into a contract with the other people who live there and that association to follow the rules and regulations where he lived. We have cited to numerous cases from private associations dealing with their rules and regulations and their enforcement of them. In all of those cases, the courts did not interfere with the enforcement mechanism used by that private association. Counsel has cited no cases where private association rules and the enforcement thereof has been reviewed and changed. The courts, for over 100 years, have not placed their judgment ahead of the judgment of the private association. Counsel, let me ask you a question because there's a factual dispute with respect to whether or not you said the roads are used almost exclusively by Lake Holiday residents and their guests. Mr. Porter says no, they're used all the time by others. If I imagine that the Lake Holiday officer, when they stop the car, they won't initially know whether or not that's a guest or a member of the community or someone just driving through the area. That is absolutely accurate. And as I understand it, if it's a guest, it's not even the guest that gets the violation, really. It's the member who invited the guest. The guest put them on notice that they have somebody who's not complying with the rules. What happens if they stop someone that is just from a neighboring community that's cutting through for whatever reason? I asked that specific question. What they would do is inform the person that they were driving in violation of Lake Holiday rules. They would warn them. They would tell them they were also trespassing in Lake Holiday and that it wasn't to be used as a cutthroat. Now, I think here the issue of the driver's license. Counsel's argument, basically, is that he was falsely imprisoned because he gave his driver's license up. Under the appellate court's logic, if you had a gated community and you drove up to the gate and they asked you for your driver's license, they have falsely imprisoned you. That simply cannot be. You have to allow these communities to be able to have some way to identify whether people have the right to be here. And simply asking for someone's driver's license and their Lake Holiday ID card is in no way a false imprisonment. The person who drives up to the gate and asks for his driver's license, he has an option. He can turn around. That's correct, yes. Did he have an option? He didn't have to drive into the Lake Holiday where they're right at the front. It says this is private property, private roads. He didn't have to drive. I mean, he happens to live there, so he's a member of the association, but he did not have to drive onto their grounds. I mean, you are correct that they do not have a hut where they ask for everyone's license before they drive in. But Mr. Porras agreed to follow the rules and he agreed specifically in the rules to give driver's license and identification when asked by Lake Holiday security. That is in the rules and regulations. I thought he said the rules in question were passed after he had taken the residence. That is absolutely correct, but that doesn't mean they don't apply to you. If you live in the community, the case law is clear on this, that by living in the community you have agreed to follow the rules and regulations of that community. And you have options. You can fight a new rule or regulation. You can run for the board. You can try to work to have it changed, or you can leave the community if you don't like the rules and regulations. But in any association you join, if you join a country club or if you join the Elks Club, you have to agree to follow their rules. Those rules may change from time to time, but you have to follow them. Now, I think that it's very important here to look at the amicus brief because I think that lays out the breadth of the potential problem here. We're looking at a potential for large communities with hundreds of miles of road to have no ability to enforce rules or regulations on those. And actually, Justice Freeman, I actually misspoke earlier when you had asked about if someone, I think it was you who had asked about a DUI, remember, in Justice Burke. If someone had committed a felony, then you are always entitled to make a citizen's arrest in that case. So that is a differentiation that counsel mentioned in his argument that I should have said, that generally Lake Holiday does not ever enforce Illinois rules, but if they saw the commission of a felony, they are entitled, like any citizen, to make a citizen's arrest and call LaSalle County that there has been a felony violation. Now, one thing counsel raised was LaSalle County making all of these roads public. Again, look at the amicus brief. The hundreds of miles of road, the thousands and thousands of visitors here, the sheriff's departments are already strapped relative to their ability to enforce. To take on additional enforcement is simply something not within their means at this point in time. It can't necessarily enforce on private roads anyway. I mean, with the sheriff. Yeah, you are correct. In some of the lake communities, there are no enabling ordinances, and they have no right to go into those communities. And you are right. And so what you have is, right now, millions of dollars are spent annually in these lakes communities. I think you saw a couple of them have over $600,000, $700,000 budgets, in order to make sure that it is safe for their members and the guests. And the appellate court decision as it sits leaves them with no recourse. They may as well not have rules because they can't enforce them. Certainly, would you agree that if these officers had, security officers had in some way abused Mr. Porras, he would have a cause of action? Absolutely. And his argument seems to be, maybe not quite the abuse, but that, for example, police officers, security officers were armed when they had no right to be armed, that kind of thing. Is there any redress he has for those kind of things? Well, first of all, the stop and case here, the officer had a flashlight. I don't consider, and there was no issue here of him attempting to do anything relative to Mr. Porras. If Mr. Porras doesn't like the idea that the private security force is authorized to carry those things which they are licensed to do, then he should go to the board and tell them. He should talk with other members of the community and say, no, we shouldn't have this. And work on getting it changed if he feels that it's improper. But what we have are rules that allow them to carry what they are licensed with exceptions, as Mr. Porras indicated. And the way you change rules when you are in a private organization is you talk with the members, you talk with the board, and you work to have them change, or you work to have them never entered in the first place. And, again, you're always free to leave. Mr. Mayen? Yes. Are they licensed by some authority to carry weapons? No. Well, you can. I mean, you could have. Oh, these officers. I believe that the rule as stated is that they can carry it if they have a certification for that. But the. The certification would have to be from the state or from. But in this case, did that officer have authority? To carry a flashlight? License. Mr. Porras mentioned he had a gun or something. No, he had no gun. There was no gun involved there. He had a flashlight. He had a large flashlight. I do not believe that any licensure is required to carry a flashlight. He couldn't carry a gun, right? Correct. He could not carry a gun. I think Mr. Porras laid out the exceptions, gun, stun gun. Yes, exactly. He could not carry. These people are not carrying guns. These people are enforcing local rules and regulations. So, in other words, they're not really licensed by some state agency for security? Correct. They are not. They have a security arm of Lake Holiday. Rather than subcontracting out to another organization, they have it within their own community, such as I think most of the Lakes communities do that as well. Well, I want to thank you very much for your time today. And I would ask that you please reverse the appellate court and reinstate the trial court's judgment as to all counts. And I wish you all a happy Thanksgiving as well. Case number 113907, Kenneth E. Porras, I believe, versus Lake Holiday Property Owners Association, Inc., et al. Appellants is taken under advisement as agenda number 16. Mr. Lyon, Mr. Porras, thank you for your arguments. You're both excused.